## Newtown Township Zoning Appeal

*Robert W. Valimont,* for appellants.

*C. David Krewson,* for appellee.

*George T. Kelton,* for intervenors.

GARB, J., November 12, 1970.—We have before us for disposition a case of apparent first impression regarding the interpretation of various provisions of the Pennsylvania Municipalities Planning Code of July 31, 1968, (act no. 247), art. I, sec. 101, 53 PS §10101, et seq., which became effective January 1, 1969, by virtue of section 102 thereof, 53 PS §10102. Appellants instituted these proceedings attacking the validity of a certain comprehensive plan and ordinance, promul-

gated by the Board of Supervisors of Newtown Township, Bucks County, Pa., on October 30, 1969, amending the Newtown Township Zoning Ordinance and Map of 1959, and also the comprehensive plan.[1] The proceedings were instituted by a pleading denominated "Zoning Appeal Notice." Although the exact nature of these proceedings was somewhat shrouded in mystery initially, it was established by agreement of the parties that this matter shall be considered as both a zoning appeal under the provisions of the said Municipalities Planning Code (see section 1001 of art. X, 53 PS §11001, et seq.), as well as an appeal from the ordinance under The Second Class Township Code pursuant to the provisions of the Act of June 6, 1963, P. L. 73, sec. 1, 53 PS §65741, which section shall be hereinafter referred to as section 702, the sectional numerology of its predecessor which was substantially the same in relevant part hereto.[2] As a result of the institution of these proceedings, a writ of certiorari was issued by the prothonotary of this county directed to the Zoning Board of Newtown Township. On December 4, 1969, this court entered an order providing that the effectiveness of the comprehensive plan, zoning ordinance and map heretofore referred to be thereby stayed pending the determination of the matter now before us. The township secured a rule upon appellants to show cause why the writ of certiorari, the zoning complaint, appeal and stay order of December 4, 1969, should not be quashed, stricken and vacated on the grounds that section 702 had been impliedly repealed by the enactment of the Municipalities Planning Code and that a proceeding under said code must, of necessity, proceed to the zoning hearing board, which was

[1] Appellants herein are allegedly a group of residents, taxpayers and landowners of Newtown Township, Bucks County, Pa.

[2] Newtown Township is a second class township.

not done by appellants. Upon answer having been filed by appellants to the township's motion for the foregoing rule, the matter was briefed and argued before the court en banc and the rule discharged by order of this court. Subsequently, intervenors were allowed to intervene by stipulation on the side of the township. The pleadings have been closed and a stipulation of facts entered of record ripening the matter for final disposition on appellants' petition under section 702.

Prior to the enactment of the Municipalities Planning Code, it was abundantly clear that section 702 constituted the proper procedure for an aggrieved party to mount an attack upon the validity of a municipal ordinance, including zoning ordinances, at least on procedural grounds: Griffith v. McCandless Township, 366 Pa. 309 (1951); Boston v. Warminster Township, 7 Bucks 215 (1957); Falls Township v. First Falls Realty Corp., 6 Bucks 6 (1956); Doylestown Township Zoning Board of Adjustment v. Jaekel, 11 Bucks 163 (1961); and Uphoff v. Upper Southampton Twp. Board of Supervisors, 11 Bucks 6 (1961).

It is clear that section 702 was not specifically repealed by the Municipalities Planning Code and this is conceded by both the township and intervenors. See the repeal section of Municipalities Planning Code in section 1201 of Article XII, 53 PS §11201. Since the entry of our order discharging the rule to show cause, it has now been decided that the Municipalities Planning Code did not repeal section 702 by implication and that it remains the correct procedure for attacking the validity of a zoning ordinance: Roeder v. Hatfield Borough Council, 439 Pa. 241 (1970). Although appellants originally purported to attack the validity of the zoning ordinance on both procedural and substantive grounds, it is now apparent that the attack under section 702 can proceed only on proce-

dural grounds: Roeder v. Hatfield Borough Council, supra; Uphoff v. Upper Southampton Twp. Board of Supervisors, supra; and Boston v. Warminster Township, supra. This, appellants concede. Therefore, the question before us is whether the enactment of the comprehensive plan as well as the amendments to the zoning ordinance and map are fatally defective for procedural reasons.

However, preliminarily to our addressing our attention to the procedural matters surrounding the enactment or amendment of the zoning ordinance, map and comprehensive plan, it must be shown that appellants are "aggrieved parties" as that term is applied in section 702. The said section provides, in relevant part, as follows:

"Any person aggrieved may, within thirty days after any ordinance or resolution takes effect, make complaint as to the legality of such ordinance or resolution to the court of quarter sessions . . ."

We do not perceive that either the township or intervenors make strenuous objection to appellants' status as aggrieved parties. However, this question was raised in support of the rule to show cause and perhaps inferentially at this time.

Prior to the enactment of the Municipalities Planning Code, appellants herein would conceivably not be considered to be aggrieved parties. See Uphoff v. Upper Southampton Twp. Board of Supervisors, supra. However, we are satisfied that if such was the case prior to its enactment, the Municipalities Planning Code dictates a contrary result. Section 910 of the code, 53 PS §10910, provides that the zoning hearing board shall have no power to pass upon the validity of any provision of an ordinance or map adopted by the governing body. However, the foregoing section provides that where the challenges to the validity of

an ordinance or map present issues of fact and of interpretation which may lie within the special competence of the board, to facilitate speedy disposition of such challenges by a court, the board may hear all challenges wherein the validity of the ordinance or map presents any issue of fact or of interpretation. Section 914 of the code, 53 PS §10914, provides that proceedings to challenge an ordinance under section 910 may be filed with the board in writing by any officer or agency of the municipality, or any "person aggrieved." It was held in Roeder v. Hatfield Borough Council, supra, that parties with the same status as those in this case were aggrieved parties within the meaning of section 914. Section 910 is appropriately invoked for the determination of questions of fact in an assault on the validity of the zoning ordinance prior to the court proceeding to determine the direct question of the validity of the ordinance: Unger v. Hampton Township, 437 Pa. 399 (1970). We construe section 910 in this regard, therefore, to mean that where there is an attack upon the validity of an ordinance, the zoning hearing board may not determine the merits of the attack but may hold a hearing to determine questions of fact. Therefore, someone attacking the ordinance may proceed directly to court under section 702 or preliminarily to the zoning hearing board to have questions of fact heard and decided. If, therefore, a contest of the validity of an ordinance on procedural questions may still go directly to the court under section 702, but may likewise initially go to the zoning hearing board for factual determination, although the board may not determine the validity of the ordinance under section 910, then the term "aggrieved parties" as used in section 914 should be the same regardless of which procedure is utilized. This, in spite

of the holding of Uphoff v. Upper Southampton Twp. Board of Supervisors, supra, decided prior to the effective date of the Municipalities Planning Code. Therefore, we are satisfied that, at least since the advent of the Municipalities Planning Code, the parties occupying the status of appellants herein are aggrieved parties for purposes of the appplication of section 702.[3]

The narrow question, therefore, for determination herein is whether the comprehensive plan and the amendments to the zoning ordinance and map were properly effected by the township supervisors pursuant to the mandates of the Municipalities Planning Code. We are satisfied that the procedures employed by the township are fatally defective for two reasons.

Section 302 of the code, 53 PS §10302, provides that the governing body shall have the power to adopt and amend the comprehensive plan and that before adopting or amending same or any part thereof, there shall be at least one public hearing pursuant to public notice. The meeting of the township supervisors of October 30, 1969, was duly advertised as a meeting held for the purpose of considering the adoption of the comprehensive plan as well as amendment to the zoning ordinance and map, the notice outlining the proposed changes to be made in the zoning ordinance, and invited all interested parties to be present and heard. At the opening of the meeting, the chairman of the board of township supervisors introduced the planning consultant to the board of supervisors and turned the meeting over to him. In his initial remarks, the consultant informed those present that the purpose of the meeting was to talk about

[3] Conceivably, appellants herein may have been considered aggrieved parties even prior to the enactment of the Municipalities Planning Code. See Wynnewood Civic Association v. Lower Merion Township, 175 Pa. Superior Ct. 20 (1954).

some changes that have been made in the proposed new *zoning ordinance* for the township. He then entered upon a soliloquy in which he explained and outlined the changes to the *zoning ordinance* which, by reference to the minutes of said meeting, lasted for approximately one-half of the total time during which the meeting was held. There were a number of questions asked and answered by him regarding the proposed change to the zoning ordinance and map. No reference was made by him in his initial remarks concerning the comprehensive plan and very few, if any, questions directed to it. At approximately half way through the meeting, one resident did raise the question of the comprehensive plan and the consultant indicated that he was not even aware that one of the purposes of the public hearing was for the consideration of the comprehensive plan. The township solicitor was absent due to illness and was replaced by his partner. The substitute solicitor indicated that the meeting was advertised to consider the comprehensive plan but disclaimed knowledge of it on the grounds that he was acting merely as a substitute. Although there seems to be some question about it, it can safely be found that a copy of the comprehensive plan was not even produced at the hearing. At one point, one of the citizens asked whether the plan was to be considered *or* enacted and the substitute solicitor indicated that it was to be considered only. Although the comprehensive plan was ultimately passed at this meeting, it is totally incomprehensible to us how these proceedings could be considered to be a hearing on the comprehensive plan as contemplated by the code. Therefore, we conclude that the requirement of a public hearing prior to the enactment of a comprehensive plan was not complied with, and its enactment a nullity. If the enactment of the comprehensive plan is fatally defective, as we find it to be, then the

enactment of the amendments to the zoning ordinance and map are likewise defective, because they can only be enacted following the adoption of a comprehensive plan. See section 303 of the code, 53 PS §10303.

Regardless of the legality of the adoption of the comprehensive plan, the enactment of the amendments to the zoning ordinance and map likewise do not conform with the mandates of the code and are, therefore, null and void. The said section 303 of the code provides that following the adoption of the comprehensive plan by the governing body, any proposed action of the same governing body relating to the adoption, amendment or repeal of an official map, subdivision and land development ordinance or zoning ordinance or planned residential development ordinances, shall be submitted to the planning agency for its recommendations, and specifically found by the governing body to be in accord with the spirit and intent of the formally adopted portions of the comprehensive plan before final action may be taken by the governing body. Initially, and perhaps of little importance, we note that the governing body did not make a specific finding that the amendments to the zoning ordinance and map were in accordance with the spirit and intent of the comprehensive plan.

Of greater import, it is apparent and agreed by all, that the amendments to the zoning ordinance and map were not submitted to the planning agency for its recommendations *following* the adoption of the comprehensive plan. The comprehensive plan was adopted at the meeting in question at 10:22 p.m., and the amendments to the zoning ordinance and map at 10:25 p.m. Obviously, the amended zoning ordinance and the amendments to the map were not

submitted to the planning agency during those intervening three minutes. Although it is clear that the planning commission of the township considered the comprehensive plan and amended zoning ordinance and amendments to the map extensively over a period of years prior to this particular meeting, we note that the zoning ordinance and map as well as the proposed comprehensive plan initially recommended by the planning commission were specifically amended in many regards in the motion of adoption made at the meeting. We have no way of knowing whether the planning commission considered the comprehensive plan or the amendments to the zoning ordinance and map as they were submitted at the meeting and passed by the supervisors. In fact, it was admitted by the supervisors' consultant at the meeting that there were some changes made to the comprehensive plan subsequent to its consideration by the planning commission, although those changes were not specified and inventoried.

In any event, we construe and regard the directions of the Municipalities Planning Code with regard to the procedures to be followed in enacting the comprehensive plan and in enacting or amending the zoning ordinance or map to be mandatory. Both the township and intervenors argue that the deviations from the strict provisions of the Municipalities Planning Code were such as to be insignificant, at best, and that the rights of the public were more than adequately protected by the lengthy consideration by the planning commission of both the plan and the zoning ordinance prior to their enactment. However, when the words of a law are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit: Statutory Construction Act

of May 28, 1937, P. L. 1019, art. IV, sec. 51, 46 PS §551. The township and intervenors ask us to pursue the spirit rather than the letter of this law, and we perceive that we may not do so.

Furthermore, and of perhaps greater significance, the enactment of zoning laws is done in the exercise of the police power and the procedures set forth for that purpose must be strictly adhered to by the governing body: Kurren Appeal, 417 Pa. 623 (1965); Kelly v. Philadelphia, 382 Pa. 459 (1955); and Thrift Feed Mill, Inc. v. Wrightstown Township, 12 Bucks 618 (1962). It is clear that the mandates of the Municipalities Planning Code were not only disregarded to some degree, but as we view it to a substantial degree in the failure of the supervisors to submit the proposed amendments to the zoning ordinance and map to the planning commission after the enactment of the comprehensive plan. The purpose of this requirement is to permit the planning commission, a body intended to exercise some expertise in the area of planning, to review the zoning ordinance or amendments thereto within the context of the comprehensive plan as enacted and make recommendations thereby to the governing body. This was not done and the elimination of this step in the enactment or amendment procedure is one of significance. Although we are not totally unsympathetic to the argument of the intervenors that there will be dire consequences to the township if we should declare the amendments to the zoning ordinance and map void because the township would then have no zoning ordinance at all, we can only say that this argument should be addressed to the legislature rather than this court.

For the foregoing reasons, we are compelled to hold that the enactment of the comprehensive plan and of the amendments to the zoning ordinance and map

now before us were not effected as required by law and are, therefore, void. Accordingly, we enter the following

ORDER

And now, to wit, November 12, 1970, the comprehensive plan and amendments to the zoning ordinance and map enacted by the Supervisors of Newtown Township on October 30, 1969, are hereby declared to be null, void and of no effect.